**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DEVELOPERS SURETY AND** | ) | |
| **INDEMNITY COMPANY,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION 1:17-00495-KD-N** |
| | ) | |
| **RENEW MAINTENANCE &** | ) | |
| **CONSTRUCTION, INC.,** *et al.,* | ) | |
|     **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Plaintiff's motion for summary judgment (Doc. 47),

Defendants' Response (Doc. 57), and Plaintiff's Motion to Strike (Doc. 58) and Reply (Doc. 59).

**I.**    <u>**Findings of Fact**</u>[1]

This dispute stems from an indemnity agreement executed between Plaintiff Developers

Surety and Indemnity Company (DSIC) and Defendants, Renew Maintenance & Construction,

Inc., Tim Reynolds and Deborah Reynolds (Defendants, RMC or the Reynolds/Indemnitors).

Specifically, on January 29, 2015, DSIC (the construction surety), RMC (the bonded

Principal), and personal guarantors the Reynolds (the Indemnitors), executed a contract to

indemnify DSIC against any and all losses and/or expenses incurred in connection with DSIC's

issuance of payment and performance bonds on behalf of RMC. (Doc. 47-1 at 90-98) (Ex. H to

Aff. Schildbach)). Loss is defined, in part, in the contract as: "l[i]ability incurred or amounts paid

in satisfaction or settlement of all claims, demands, damages, costs, lawsuits, legal….awards or

---

[1] The facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

judgments relating to Principal's [RMC's] actual or alleged nonperformance of any obligation covered by a Bond." (Doc. 47-1 at 90). Article 2 (Indemnification) provides as follows:

> Indemnitors agree to fully and continuously indemnify Surety against any and all Loss or expenses of every kind or nature, including, without limitation, those incurred: (i) by reason of having executed or procured the execution of any Bond, (ii) by reason of the failure of any Indemnitor to perform or comply with the covenants and conditions of this Agreement, and (iii) enforcing any of the covenants and conditions of this Agreement. Also, indemnitors agree to indemnify Surety against the fees and disbursements of counsel whether on salary, retainer or otherwise.
>
> ***
>
> Surety may at its sole and absolute discretion pay, compromise, defend, settle, investigate, appeal or otherwise handle or resolve any claim, demand, suit, arbitration demand, judgment, award or expense arising out of or related to any Bond. Any such act or decision by the Surety is binding upon and ratified by Indemnitors and any cost, expense or payment incurred or made by the Surety shall be a Loss covered by this Agreement. An itemized statement, sworn to by any employee of the Surety, or a copy of a check or draft or other evidence of such payment or compromise, shall be prima facie evidence of the fact and amount of any Loss and the liability of Indemnitors for it under this Agreement.

(Id. at 91). Article 3 (Collateral Reserve) provides that the Indemnitors agreed to certain contractual obligations such as agreeing to -- immediately and upon demand -- collateralize DSIC:

> ….Surety may demand a collateral reserve in a dollar amount which the Surety in its sole discretion determines is adequate. Immediately upon demand, and whether or not Surety has made any payment or incurred an actual Loss to date, Indemnitors shall deposit collateral with Surety in an amount equal to the collateral reserve demanded….If Indemnitor neglects, refuses or otherwise fails to deposit the demanded collateral reserve Surety may seek a mandatory injunction to specifically enforce Indemnitors' agreement to honor a collateral reserve demand. Surety may also seek any other available remedy at law or in equity…..

(Id.) Article 5 (Default) provides that Indemnitor "shall be in default" upon the occurrence of certain events, including: "breach of, or failure, refusal or inability to perform any contract or other obligation covered by a Bond[;]"Indemnitor's failure "to perform, or comply with, any of the terms, covenants and obligations" of the contract; etc. (Id. at 92).

On April 28, 2015, non-party Independent Living Center Building Co., Inc. (ILC) (owner) executed a "Standard Form of Agreement Between Owner and Contractor for a Project of Limited

Scope" with RMC (contractor), to perform work at the Independent Living Center of Mobile, in Mobile, Alabama.  On April 29, 2015, surety DSIC issued a Performance Bond and Payment Bond (#461771) on behalf of principal RMC, with ILC as obligee, for this project.[2]  (Doc. 47-1 at 8-16 (Ex. A to Aff. Schildbach)).  Thereafter, disputes arose between RMC and ILC.   On April 25, 2016, ILC issued a Construction Contract Termination notice letter to RMC, terminating RMC's right of performance under the contract.  (Doc. 47-1 at 17-19 (Ex. B to Aff. Schildbach)).  ILC also asserted a claim against DSIC under the Performance Bond.  (Id.)  DSIC denied ILC's Performance Bond claim and filed a declaratory judgment action on August 11, 2016 in this Court (CV 16-340).  (Doc. 47-1 at 20-34 (Ex. C to Aff. Schildbach)).  In response, ILC asserted a counterclaim against DSIC and RMC.  On March 30, 2017, DSIC made a formal demand (via letter) for both Article 2 indemnification and for Article 3 satisfaction of collateral obligations on Defendants, which was refused.  (Doc. 47-1 at 5 (Aff. Schildbach); Doc. 47-1 at 100-105 (Ex. I to Aff. Schildbach)).  On April 13, 2017 DSIC participated in medication with ILC.  On October 25, 2017, ILC and DSIC executed a settlement agreement -- DISC paid ILC approximately $400,000 in return for a full and final release of all claims against it under the Performance Bond.  (Doc. 41 at 3; Doc. 47-1 at 71-77 (Ex. E to Aff. Schildbach)).

Thereafter, DSIC initiated the current litigation to enforce the indemnification contract with Defendants and to recover **$743,364.38** for the losses/expenses incurred due to Defendants' alleged non-performance: 1) $416,509.95 -- comprised of the $400,000 settlement and $16,509.95 paid to Thyssenkrupp Elevator, Inc. from the prior litigation (CV 16-430); 2) $277,369 through October 31, 2017 for the cost of consultants and attorneys; and 3) additional lost adjustment

---

[2] As a condition precedent to issuance of the bonds, Indemnitors individually, jointly and severally, executed the January 2015 indemnity agreement.

expenses it will continue to incur for payments which have not yet been made but for which it remains obligated.  In this case, DSIC alleges four (4) claims against the Defendants as follows: 1) breach of indemnity contract against the Indemnitors (Count I); 2) breach of statutory indemnity against the Principal RMC (Count II) (<u>Ala</u>. <u>Code</u> § 8-3-5);[3] 3) common law indemnification against the Principal RMC (Count III); and 4) unjust enrichment against the Indemnitors (Count IV).

## II.   <u>Motion to Strike</u>

Per Rule 56 of the <u>Federal Rules of Civil Procedure</u>, motions to strike "material" on summary judgment have been inappropriate since 2010.  Rule 56(c)(2) provides that instead, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence[ ]" -- meaning that:

> …The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. ***There is no need to make a separate motion to strike***. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, Adv. Comm. Notes, "Subdivision(c)" (2010 Amendments) (emphasis added). As such, the Court construes the motion to strike as an Objection.

DSIC objects to Paragraphs 14-20 of the Affidavit of Deborah Reynolds (Doc. 57-1 (Aff. Reynolds)) and portions of the Indemnitors' brief which reference same, as inadmissible confidential mediation communications.  DSIC describes same as "statements allegedly uttered in the confines of a confidential mediation, and the declarant's thoughts and opinions of DSIC's and third parties' subjective beliefs."  (Doc. 58 at 1).  DSIC objects to the material's use and/or

---

[3] Providing that: "Payment by a surety or endorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal."

(Continued)

admissibility -- contending that the material is not, and would not, be admissible in evidence per Rule 11 of the <u>Alabama Civil Court Mediation Rules</u>.[4]

At the outset, while exceptions exist under Rule 11(b), none appear to apply to the circumstances before the Court.[5]  Additionally, the Court has not relied on Paragraphs 14-18 or 20 of the Reynolds Affidavit (or portions of the Indemnitors' Response referencing same) on summary judgment, such that the Objection is **MOOT.**  <u>See</u>, <u>e.g.</u>, <u>Hallmark Dev., Inc. v. Fulton Cty., Ga.</u>, 466 F.3d 1276, 1288 (11th Cir. 2006) ("Hallmark challenges the District Court's decision to admit the testimony of Mr. Hammond....We do not reach this issue because the….judgment does not depend on the admissibility of Mr. Hammond's testimony[]").  Moreover, Paragraph 19 does not appear to *disclose* confidential mediation communications, instead referencing only the unilateral

---

[4] Rule 11 prohibits the Indemnitors from divulging confidential information disclosed during mediation ("shall not be divulged by anyone in attendance at the mediation"), including but not limited to: 1) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; 2) admissions made by another party in the course of the mediation proceedings; 3) proposals made or views expressed by the mediator;  4) the fact that another party had or had not indicated a willingness to accept a proposal for settlement made by the mediator; and 5) all records, reports, or other documents received by a mediator while serving as mediator.  Rule 11(c) also provides, in part, that a court "shall neither inquire into nor receive information about the positions of the parties taken in mediation proceedings; the facts elicited or presented in mediation proceedings….."

[5] Compare with other federal courts' handling of such situations. For instance, one federal court in the Fifth Circuit discussed mediation communications as confidential (to promote the free flow of information to potentially result in settlement) but not necessarily privileged: an evidentiary privilege has not been created precluding "a litigant from challenging the validity of a settlement based on events that transpired at a mediation…Indeed, such a privilege would effectively bar a party from raising well-established common law defenses…..It is unlikely that Congress intended such a draconian result under the guise of preserving the integrity of the mediation process." <u>F.D.I.C. v. White</u>, 76 F. Supp.2d 736, 737-738 (N.D. Tex. 1999) (denying a motion to strike statements made during mediation).  Additionally, federal courts applying Florida's mediation rule allow for disclosure in certain circumstances. <u>See</u> also <u>e.g.</u>, <u>Carles Const., Inc. v. Travelers Cas. & Surety Co. of Am.</u>, 2014 WL 11798514, *1-2 (S.D. Fla. Apr. 29, 2014) (noting that a central issue was whether one party acted in bad faith during mediation in the earlier legal proceeding such that the confidentiality of mediation communications was "not an inviolable principle[]"); <u>Carles Const., Inc. v. Travelers Cas. & Surety Co. of Am.</u>, 56 F.Supp.3d 1259 (S.D. Fla. Mar. 31, 2014) (finding that Florida's prohibition on disclosure of mediation communications did not apply to summary judgment affidavit of subcontractor's principal regarding how settlement in prior mediation of state court dispute was conducted by its surety).

thoughts and "understanding" of Deborah Reynolds, thus the Objection to Paragraph 19 (and related references in the Response) is **DENIED.**  As such, DSIC's Objection is **MOOT in part** and **DENIED in part.**

## III.    Motion for Summary Judgment Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c)(1)-(4) provides as follows:

**(c) Procedures.**
**(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
**(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
**(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing

6

the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

**IV.   Conclusions of Law**[6]

**A.   Common law indemnification, unjust enrichment and statutory indemnity**

The parties do not dispute the existence of a valid, express, and applicable contract.  In the Complaint Plaintiff alleges: "[t]here exists a valid and fully enforceable contract between…[it]…and the Indemnitors, the terms of which are memorialized in the *Indemnity Agreement*."  (Doc. 1 at 6 (emphasis in original)).  See also Doc. 47 at 2, 4 at ¶¶1-2, 10 (motion for summary judgment). Defendants admit the existence of such in their summary judgment Response (Doc. 57 at 2, 4 at ¶¶1-2, 10), and have also raised the issue of the duplicative nature of certain claims in same.   (Doc. 57 at 9).  As a matter of law then, DSIC's common law indemnification, unjust enrichment, and statutory indemnity claims are rendered moot by its breach of contract claim, as simply alternative theories for recovery.

Specifically, the existence of an express contract extinguishes an unjust enrichment claim because unjust enrichment is an equitable remedy to be used only when there is no adequate remedy at law (i.e., the assertion of a breach of contract claim provides *the opportunity* (whether or not ultimately successful) for an adequate remedy at law such that a simultaneous unjust enrichment claim is improper).  See, e.g., Univalor Trust, SA v. Columbia Petroleum, LLC, 315

---

[6] The parties do not dispute that Alabama law governs. "Alabama law follows the traditional conflict-of-law principles of *lex loci contractus*…." Lifestar Response of Ala., Inc. v. Admiral Ins. Co., 17 So.3d 200 (Ala. 2009). Thus, contract claims are governed by the laws of the state where the contract was made unless the "parties have legally contracted with reference to the laws of another jurisdiction." Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala.1991).  Per the allegations of the Complaint, the contract and relevant events occurred in Alabama.  (Doc. 1).

F.R.D. 374, 382 (S.D. Ala. Jun. 21, 2016) (citing relevant Alabama law).  Likewise, a common law indemnification claim is moot as duplicative when parties have entered into an express indemnification agreement.  See, e.g., Gray Ins. Co. v. Kis Stucco & Stone, Inc., 2014 WL 12600294, *6 (S.D. Ala. May 16, 2014) ("Gray seeks indemnity under an express contract, it may not simultaneously pursue a common law theory of indemnity[]"); Companion Prop. and Cas. Ins. Co. v. Greaves-Walker, Inc., 2013 WL 6442767, *4-5 (S.D. Ala. Dec. 10, 2013) (same).[7] Moreover, as argued by DSIC, Alabama Code § 8-3-5 provides a means of recovery via statutory indemnity if/when a relevant contract is deemed unenforceable or invalid, not in addition to (or simultaneously with) recovery under a breach of contract claim.  Despite DSIC's argument and while perhaps "less clear" to the undersigned whether DSIC can "simultaneously pursue both contractual indemnity and statutory indemnity under Ala. Code § 8-3-5[]" Gray Ins Co., 2014 12600294 at *7, this Court has held that statutory and equitable claims are superseded by

---

[7] See also e.g., Western Surety Co. v. MCMUSA, LLC, 2014 WL 12644257, *4 (D. Mass. Aug. 29, 2014); Cincinnati Ins. Co. v. Savarino Const. Corp., 2011 WL 1068022, *22 (S.D. Ohio Mar. 21, 2011) (dismissing common law indemnification claim as duplicative where parties entered into express indemnification agreement); Far West Ins. Co. v. J. Metro Excavating, Inc., 2008 WL 859182, *13 (N.D. Ind. Mar. 28, 2008) (denying as moot common law claim for exoneration where indemnity agreement provided surety with contractual rights regarding future losses); 3 BRUNER & O'CONNOR ON CONSTR. LAW § 10.103 (collecting cases and stating "[w]here a written agreement exists, the surety's indemnity rights will be determined by the contract rather than by common-law indemnity principles[]").  See also Fidelity Nat. Title Ins. Co. v. B&G Abstractors, Inc., 2015 WL 6472216, *10 (W.D. Penn. Oct. 27, 2015):

> …in certain circumstances, such as when there is some question about whether a contract exists or whether certain issues are covered by the contract, it might make sense to allow a plaintiff to pursue common law remedies alongside a claim for breach of contract. It does not, however, make sense when, as here, there is no dispute that the parties' Agreement covers the issue of indemnity. Under such circumstances, Plaintiff's claim must live or die under the terms of the Agreement, the terms of which the parties agreed would govern any disputes between them. Cf. Boeynaems v. LA Fitness Int'l, LLC…2011 WL 4048512, at *22 (E.D.Pa. Sept.12, 2011) (quoting AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC…2011 WL 3241356, at *3 (E.D.Pa. July 29, 2011)) (dismissing a claim for unjust enrichment because "neither party contest[ed] the validity of the Agreement, and 'any recovery would be determined on the basis of that contract alone' ")….

contract[]" and that "*at best[,] such claims would apply only to…the principal, and not to the Indemnitors[,]*" Hartford Cas. Ins. Co. v. Hyperion Const., LLC, 2012 WL 74754, 1 at note 1 (S.D. Ala. Jan. 10, 2012) (emphasis added)).  *Cf.* Travelers Cas. and Sur. Co. of Am. v. Thorington Elec. & Const. Co., 2009 WL 4758729, *2 (M.D. Ala. Dec. 8, 2009) (suggesting that in addition to a surety's contractual rights under a valid indemnity agreement, statutory rights exist).  Defendants have also raised this legal point in their Response.  (Doc. 57 at 9).

As such, it is **ORDERED** that DSIC's motion for summary judgment on its claims for breach of statutory indemnity against the Principal RMC (Count II) (Ala. Code § 8-3-5), common law indemnification against the Principal RMC (Count III) and unjust enrichment against the Indemnitors (Count IV), is **DENIED** as those claims have been rendered **MOOT.**  As a matter of law, this leaves only one (1) claim for summary judgment -- the breach of (indemnity) contract claim (Count I) against the Indemnitors (the Reynolds).[8]

## B.   **Breach of Contract**

To establish a breach of contract, DSIC must establish: 1) the existence of a valid contract; 2) its performance under the contract; 3) the Indemnitors' non-performance; and 4) damages. Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009); Univalor Trust, SA v. Columbia Petroleum, LLC, 2017 WL 2303999, *9 (S.D. Ala. May 25, 2017).  "Alabama common law 'recognize[s] the general rule that every contract carries with it an implied-in-law duty of good faith and fair dealing.'"  Whitney Bank v. Murphy, 2013 WL 1191235, *4 (S.D. Ala. Mar. 22, 2013).  See also Georgia-Pacific Consumer Prod. LP v. Zurich Am. Ins. Co., 184 F.Supp.3d 1337, 1343 (S.D. Ala. 2016).  Additionally, in the surety realm, an indemnitor *may* argue bad faith as a defense to liability: "a surety's right to recover under an indemnity agreement may be defeated by

---

[8] RMC is **TERMINATED** and all claims against it are **DISMISSED** as **MOOT.**

proof that the payment was made fraudulently or in bad faith." Hartford Cas. Ins. Co. v. Hyperion Const., LLC, 2012 WL 74754, *3 (S.D. Ala. Jan. 10, 2012). However, "the mere payment of claims --"even those for which the principal has a valid defense -- does not amount to bad faith." Id. (citing Frontier Ins., 124 F.Supp.2d at 1213-1214)). Likewise, gross negligence or "self-interest is not synonymous with bad faith." Id. Rather, bad faith means a dishonest purpose, a conscious wrongdoing, or a breach of duty motivated by self-interest or ill-will (e.g., that the surety acted with deliberate malfeasance (an intentional wrongful act which the actor has no legal right to do) or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty). Id.; Hanover Ins. Co. v. Hudak & Dawson Const., 946 F.Supp.2d 1208, 1219 (N.D. Ala. 2013). Nevertheless, as noted by the Eleventh Circuit in Auto-Owners Ins. Co. v. Se. Floating Docks, Inc., 571 F.3d 1143, 1146 (11th Cir. 2009) (emphasis in original), "'a surety's failure to conduct an adequate investigation of a claim upon a...bond, when accompanied by other evidence, reflecting an improper motive, properly *may* be considered as evidence of the surety's bad faith.'" As explained in Gray Ins. Co., 2014 WL 12600294 at *8-9 (footnote omitted):

> …. Defendants argue….there is a genuine issue of fact as to whether Gray settled the White-Spunner lawsuit in good faith.
>
> > "[I]ndemnitors can defeat a surety's right to recover under indemnity provisions by demonstrating either fraud of lack of good faith on the part of the surety in discharging its obligations under the bond." Frontier Ins. Co., 124 F. Supp. 2d at 1214; see also Fidelity & Deposit Co., 722 F.2d at 1163 (noting that contractual indemnity agreements are routinely enforced absent the "single exception" of payments made by the surety through fraud or bad faith); Engbrock v. Fed. Ins. Co., 370 F.2d 784, 786 (5th Cir. 1967) ("In the face of these provisions, an indemnitor may successfully attack payments made by [the surety] only by pleading and proving fraud or lack of good faith by [the surety].").
> >
> > "In the suretyship context, lack of good faith 'carries an implication of dishonest purpose, a conscious doing of wrong, a breach of duty through motives of self-interest or ill-will.' " Frontier Ins. Co., 124 F. Supp. 2d at 1214 (quoting Elmore v. Morrison Assurance Co., 502 So.2d 378, 380 n.1 (Ala. 1987)). To establish bad faith, the indemnitor must demonstrate that the surety acted with "deliberate malfeasance, which is an intentional wrongful act which the action has no legal right to do, or any wrongful conduct

which affects, interrupts, or interferes with the performance of official legal duty." Employers Ins. of Wausau, 749 F. Supp. at 1103. A "lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith." Id.

Hanover Ins. Co., 946 F. Supp. 2d at 1220. See also Elmore, 502 So.2d at 380 n.1 ("Want of good faith involves more than bad judgment or negligence or insufficient zeal." (quotation omitted)).

In support of its argument that Gray did not act in good faith, the Defendants cite to Auto-Owners Ins. Co. v. Se. Floating Docks, Inc., 571 F.3d 1143 (11th Cir. 2009), in which the Eleventh Circuit agreed with the conclusion in PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 267 Conn. 279, 838 A.2d 135 (2004), that "'a surety's failure to conduct an adequate investigation of a claim upon a ... bond, when accompanied by other evidence, reflecting an improper motive, properly may be considered as evidence of the surety's bad faith.'" Auto-Owners, 571 F.3d at 1146 (quoting PSE Consulting, 835 A.2d at 155)…..

Initially, it is unclear how applicable Auto-Owners is to this action, which involves Alabama law…..Auto-Owners primarily applied PSE Consulting, a Connecticut case…

Regardless, the Defendants have not pointed to evidence suggesting that Gray acted in bad faith……

\*\*\*

….other than their own conclusory assertions….Defendants have cited no authority or evidence indicating that Gray's conduct…"'carries an implication of dishonest purpose, a conscious doing of wrong, [or] a breach of duty through motives of self-interest or ill-will.' " Frontier Ins. Co., 124 F. Supp. 2d at 1214 (quoting Elmore v. Morrison Assurance Co., 502 So.2d 378, 380 n.1 (Ala. 1987)) (alteration added)…..."Courts have repeatedly emphasized that even 'gross negligence, bad judgment and alleged excessive payments by the surety does not rise to the level of bad faith.'" Hanover Ins. Co., 946 F. Supp. 2d at 1222 (quoting Frontier Ins. Co., 124 F. Supp. 2d at 1214-15 (citing Engbrock, 370 F.2d at 785–87; Fireman's Fund Ins. Co. v. Nizdil, 709 F. Supp. 975, 976–77 (D. Or. 1989)))….

In this case the Indemnitors have failed to put forth sufficient evidence that DSIC acted with a dishonest purpose.  Rather the Indemnitors have relied on their assertions that DSIC was negligent in not conducting discovery, used bad judgment in settling and paid an excessive amount to settle.  This is insufficient to establish bad faith.

Moreover, indemnity agreements often provide that the surety has the right to make payments and settle all claims *unless* the principal/indemnitors request that the surety litigate and *post collateral* (to secure the amount of a possible judgment, expenses of litigation, etc.).  From this, federal courts within the Eleventh Circuit have held that a bad faith defense is not available to a principal/indemnitor who fails to post collateral upon demand under an indemnification

agreement.  Great Am. Ins. Co. v. Brewer, 2017 WL 8314689, *7 (M.D. Fla. Aug. 23, 2017) (citing Fidelity & Deposit Co. of Md. v. C.E. Hall Const., Inc., 627 Fed. Appx. 793, 795-796 (11th Cir. 2015) (affirming order granting surety's motion for summary judgment against defendant on indemnification claims where surety settled bond claim in good faith after defendant failed to post collateral)).  "[I]f an indemnitor fails to post contractually required collateral, a surety's paying or settling a claim cannot amount to bad faith." United States Surety Co. v. Best Const. Drywall Servs., Inc., 2018 WL 2267109, *2-3 (M.D. Fla. May 17, 2018) ("defendants fail to show that they posted any collateral. The…failure to post collateral precludes the defendants' relying on the defense of bad faith[]") (citing Liberty Mut. Ins. Co. v. Aventura Engineering & Const. Corp., 534 F.Supp.2d 1290, 1316 (S.D. Fla. 2008)).  See also e.g., Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 721 (5th Cir. 1995) (the surety did not settle in bad faith a disputed claim that was being litigated when the principal failed to post the collateral which would have prevented the surety from settling with the bond obligee (the posting of collateral was a condition precedent with which the principal failed to comply); Western Surety Co. v. Steuerwald, 2017 WL 5241023 (S.D. Fla. Sept. 5, 2017) ("[a]llegations of surety bad faith will not be heard where a principal fails to meet his obligation to post collateral to secure the surety against loss[]"); Developers Sur. & Indem. Co. v. Magna Constr., Inc., 2008 WL 11333900 (S.D. Fla. 2008) (granting summary judgement in favor of surety and recognizing that several courts have held failure to post collateral defeats a defense of bad faith); Fidelity and Deposit Co. of Md. v. D.M. Ward Const. Co., Inc., 2008 WL 2761314, *3 (D. Kan. Jul. 14, 2008) ("[p]ursuant to this clause, defendants bargained away the right to contest how plaintiff handled claims upon the bonds unless they were willing to post collateral satisfactory to plaintiff. In cases with similar contractual clauses, courts have held that the indemnitor may not make a claim of bad faith where it failed to post the required collateral[]");

United States Fid. & Guar. Co. v. Feibus, 15 F.Supp.2d 579, 585 (M.D. Pa. 1998) ("Defendants ignored repeated requests by the plaintiff to provide collateral security, in violation of a surety agreement, weighs against a finding that the surety acted in bad faith in settling claims[]"'' and noting that other "[c]ourts have held that a principal's failure to deposit collateral security, in violation of a surety agreement, weighs against a finding that the surety acted in bad faith in settling claims[]"); Gen. Accident Ins. Co. of Am. v. Merritt–Meridian Constr. Corp., 975 F. Supp. 511, 516 (S.D.N.Y. 1997) (settling disputed claims after indemnitors failed to post collateral defeats a finding of bad faith); Banque Nationale de Paris S.A. v. Insurance Co. of North America, 896 F. Supp. 163, 164 (S.D.N.Y. 1995) (surety is free to settle claims in good faith where debtor/indemnitor deposited no collateral); Employers Ins. of Wausau v. Able Green, Inc., 749 F. Supp. 1100, 1102-1103 (S.D. Fla. 1990) (finding that the posting of collateral to cover litigation expenses was required by the indemnity agreement and the indemnitor's failure to fulfill this term means that its bad faith allegation "cannot withstand" given its "failure to comply[]").

As noted *supra*, the parties do not dispute the existence of a valid contract, instead disputing one another's performance/non-performance.  The facts reveal that DSIC faced a claim from ILC against the bond.  DSIC then made a demand against the Indemnitors to indemnify, exonerate and post collateral security related to the ILC action.  (Doc. 47-1 at 5 (Aff. Schildbach); Doc. 47-1 at 100-105 (Ex. I to Aff. Schildbach)).  As noted *supra*, the indemnity agreement (Article 3) provides that the Indemnitors shall -- immediately and upon demand -- collateralize DSIC.  Article 5 also provides that Indemnitor "shall be in default" upon the occurrence of certain events, including failing or refusing to perform any contractual or other obligation.  In response, RMC and the Indemnitors failed to post collateral and/or indemnify DSIC.  The Indemnitors do not dispute this.

DSIC argues that the Indemnitors fail to "provide….any legally-viable defense for their failure to….post collateral upon demand by DSIC." (Doc. 59 at 2). As a matter of law, DSIC is correct. The Indemnitors' failure (or refusal) to perform its collateral contractual obligation constitutes a breach of the indemnity agreement (non-performance).[9] This failure means also, the Indemnitors lose other rights under, and defenses to, the contract. One such loss is the defense of bad faith. In an attempt to avoid this result, the Indemnitors claim that even though they failed to post collateral as required under the contract, DSIC subsequently waived the requirement. From this, the Indemnitors assert that they are still entitled to raise a bad faith defense.

Specifically, Indemnitors argue that while DSIC initially demanded collateral, "it thereafter released and/or waived that demand during its communications with RMC on April 13, 2017[]" -- referencing the mediation of the underlying action. (Doc. 57 at 10). In support, the Indemnitors rely on Doc. 57-1 at 6 (Aff. Reynolds at ¶19). DSIC asserts that it did not waive and/or release its collateral demand, at any point, adding that per the indemnity agreement (and as indicated in the

---

[9] See, e.g., Travelers Cas. and Surety Co. of Am v. C.R. Calderon Const., Inc., 2017 WL 2256600, *3 (D. Md. May 2, 2017) (on injunctive review, finding a strong likelihood of success on the merits that indemnitors breached their contractual obligation to post collateral (the collateral security provision of the indemnity agreement), given their failure to do so); In re Zinn, 2017 WL 262043, *14 (D. Md. Jan. 17, 2017) ("[t]he breach of contract was the failure to post…collateral[]"); International Fidelity Ins. Co. v. Talbot Const., Inc., 2016 WL 8814367 (N.D. Ga. Apr. 13, 2016) ("Indemnitors should not be rewarded for their apparent breach of contract by avoiding the contribution of collateral for costs they have thus far evaded[]"); XL Spec. Ins. Co. v. Truland, 2015 WL 2195181, *6 (E.D. Va. May 11, 2015) ("[t]his case is quite simple….Neither party disputes that demands were made on the bonds. This triggered both parties' obligations. Plaintiffs had an obligation to make payments….and the Trulands had an obligation to post collateral…and to indemnify Plaintiffs….The Trulands have not fulfilled their obligation, failing to post collateral….This is a breach of the Indemnity Agreement…[]"); Liberty Mut. Ins. Co. v. SLC Const., LLC, 2012 WL 12894736, *6 (S.D. Tex. Apr. 13, 2012) (discussing the indemnitors failure to rebut the evidence that they failed and refused to pay the surety or post collateral and finding "[g]iven this uncontroverted record, there is no genuine issue of material fact on whether Defendants breached the indemnity agreement[]"); Colonial Surety Co. v. Isola, 2010 WL 11565757, *3 (D. Conn. Jul. 21, 2010) (granting summary judgment on a breach of indemnity contract claim due to the party's failure to post the contractually required collateral and given the contract's express terms).

(Continued)

14

March 30, 2017 demand letter) any legally valid release/waiver of collateral *must be in writing*. (Doc. 59 at 11). No such writing is before the Court, nor is such alleged to have issued. The evidence before the Court supports that DSIC demanded collateral, the Indemnitors refused, and no written release/waiver of the collateral requirement issued. Even when viewing the facts in the light most favorable to the Indemnitors, the Court cannot conclude that they have created a genuine issue of material fact regarding the collateral requirement to entitle them to a bad faith defense. Upon consideration, the Indemnitors' failure to post collateral is a failure to perform under the contract which precludes them from asserting bad faith. See *supra*. For these reasons, and the fact that the Indemnitors failed to present sufficient evidence of bad faith, DSIC's motion on the breach of contract claim against the Indemnitors is **GRANTED.**[10]

The Court thus turns to damages. While the Court finds that DSIC is entitled to damages due to the Indemnitors' breach of contract, the amount of damages is not sufficiently supported or explained in the record. DSIC seeks **$743,364.38** for unreimbursed losses and loss adjustment expenses related to the issuance of the Bonds -- specifically recovery for total direct losses of **$416,509.95 plus loss adjustment expenses** (varying from $277,369.00 to $326,854.43, through October 31, 2017) **plus attorneys' fees and costs**. (*Cf.* Doc. 1 at 4; Doc. 47 at 4; Doc. 47-1 (Aff. Schildbach at 3-4)). Notably, the Court's review of the affidavit and exhibits in support does not indicate how DSIC arrived at the figures -- especially the varying $277,369 versus $326,854.43 requested sums and/or whether such includes attorneys' fees and costs (separate and apart from those fees/costs sought on summary judgment). As such, it is **ORDERED** that DSIC shall file, on

---

[10] The Indemnitors' motion seeks additional time to respond to the summary judgment, to conduct discovery "to determine the motive behind DSIC's payments in the underlying litigation." (Doc. 57 at 10). This request is rooted in the Indemnitors' bad faith defense. However, discovery ended on September 21, 2018 without the Indemnitors seeking a timely extension to conduct additional discovery.

or before **October 12, 2018,** a Supplement specifying and explaining (as well as providing support

for) the specific amount of breach of contract damages sought.

## V.    <u>Attorneys' Fees</u>

The indemnity agreement -- the contract -- provides for the recovery of attorneys' fees,

legal expenses and costs.  (Doc. 47-1 at 90-91).  DSIC seeks to recover **$31,839.98** as reasonable

attorneys' fees and costs and submits two (2) Affidavits and documentation (billing records) in

support.  (Doc. 47-2 (Aff. Geller); Doc. 47-2 (Aff. Green)).  DSIC retained the following law firms

and counsel: 1) Etcheverry Harrison, LLP -- Partner Jeffrey S. Geller (Geller), Managing Partner

Edward Etcheverry (Etcheverry) and Associate Joyce C. Albert (Albert) (Doc. 47-2 at 1-31

(including Affidavit); and 2) Wright Green, PC -- Senior Shareholder James P. Green (Green)

(Doc. 47-2 at 32-41 (including Affidavit)).[11]

As explained in <u>Precision IBC, Inc. v. Phoenix Chemical Tech., LLC</u>, 2017 WL 1404328,

*1-2 (S.D. Ala. Apr. 19, 2017 (R&R adopted)):

> "Alabama follows the American rule, whereby attorney fees may be recovered if they are
> provided for by statute or by contract...." *Jones v. Regions Bank*, 25 So. 3d 427, 441 (Ala.
> 2009) (citations omitted)....Under Alabama law, such attorney's fees are recoverable;
> however, recovery is subject to Alabama's imposition of a reasonableness constraint on all
> fee shifting contracts, as a mat[t]er of public policy....
>
> The calculation of reasonable attorney's fees is within the sound discretion of the court.
> *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1187 (11th Cir. 1983); *Kiker v. Probate
> Court of Mobile Cty.*, 67 So. 3d 865, 867 (Ala. 2010)...."'the most useful starting point for
> determining the amount of a reasonable fee is the number of hours reasonably expended
> on the litigation multiplied by a reasonable hourly rate.'" *Watford v. Heckler*, 765 F.2d
> 1562, 1568 (11th Cir. 1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433....(1983)).
> "The first step....is to determine the 'lodestar'—the product of multiplying reasonable
> hours expended times a reasonable hourly rate." *Martinez v. Hernando Cty. Sheriff's Office*,
> 579 Fed.Appx. 710, 713 (11th Cir. 2014) (citing *Am. Civil Liberties Union of Ga. v. Barnes*,
> 168 F.3d 423, 427 (11th Cir. 1999)); *see also Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348,
> 1350 (11th Cir. 2008) ("The product of these two figures is the lodestar and there is a
> 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve."). The

---

[11] DSIC seeks to recover time billed by "various paralegals" ("PL") at the rate of $125/hour.  (Doc.
47-2 at 2 at ¶8).  The records do not reflect any billing by paralegals.  As such, this request is **DENIED.**

party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Barnes*, 168 F.3d at 427. The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

…the prevailing party must not request fees for hours that are "excessive, redundant, or otherwise unnecessary," or request fees for unsuccessful claims. *Hensley*, 61 U.S. at 434-35. When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350. Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. *See, e.g., Norman v. Hous. Auth. of the City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988). Notably, "[t]he court…is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." *Id*. at 1303 (citations omitted).

The lodestar figure established by the Court may be adjusted in consideration of various factors that include:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988)….

In determining the proper lodestar in this case, the undersigned first considers what hourly rates are reasonable and then what hours were reasonably expended in pursuing this matter. In so doing, the Court keeps in mind that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437...

Adjustments may be made "as necessary[.]" <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984).[12]

---

[12] <u>Norman v. Hous. Auth. of the City of Montg.</u>, 836 F.2d 1292 (11th Cir. 1988).  Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended.  <u>Hensley</u>, 461 U.S. at 434.  Even when a party prevails, the court still must determine whether (Continued)

Indeed, regardless of who is doing the billing, courts may only award fees time spent by attorneys, or for the work of non-lawyer paralegals and non-lawyer law clerks but only to the extent they perform work "traditionally done by an attorney[]" -- i.e., there can be no fees awarded for overhead.  See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 at note 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[]"); Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 54, 2015); SE Prop. Holdings, LLC v. 145, LLC, 2012 WL 6681784, *4-5 (S.D. Ala. Dec. 21, 2012).  See also Brown v. Lambert's Cafe III, 2016 WL 325131, *6 and note 4 (S.D. Ala. Jan. 27, 2016).[13]  "Courts

---

time was reasonably expended and if not, that time should be excluded.  Id.  While the "lodestar" method effectively replaced the balancing test in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), the 12 Johnson factors "might still be considered in terms of their influence on the lodestar amount.

[13] Non-recoverable tasks.  See, e.g., Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013); Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012); Andriello v. CFI Sales & Marketing, Inc., 2012 WL 3264920, *9 (M.D. Fla. Jan. 4, 2012); Miller v. Kenworth of Dothan, Inc., 117 F.Supp.2d 1247, 1261 (M.D. Ala. 2000).  As explained in Ford v. Navika Capital Group, LLC, 2017 WL 1381668, *3-4 (S.D. Ala. Apr. 17, 2017) (internal citations omitted):

> Such non-recoverable tasks include time billed for: setup of a file, calendaring deadlines, receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, preparing civil cover sheets and summons, receiving and indexing certified mail receipts, e-filing documents with the Court, receiving and indexing those documents, mailing and telefaxing correspondence, making calls to clients, obtaining pleadings from the court's database, printing documents, miscellaneous scanning of documents, etc…[FN4]...
>
> > [FN4] ….(clerical tasks such as "Review Summons Issued," "Call to Clerk to confirm Summons were sent to Marshall for service," "Download/Combine and OCR Transcript, live bookmark," and "Download, file and save Corrected transcript in parts," are not compensable as attorney fees);….(downloading, scanning or saving files or docket entries are not recoverable); …..(an attorney in an FLSA case should not be permitted to recover fees for clerical time for e-filing, on line research of addresses, preparing civil cover sheets and summonses and for reviewing the CM/ECF email for documents prepared and filed by counsel).
>
> … The billing records include numerous entries for such tasks (…."receive settlement agreement and W9 form signed from client: scan to file and save,"…."re-scan settlement agreements into S drive for clients", …"further preparation of documents for client correspondence", …"conference with counsel regarding strategy on service affidavits," …"compilation of correspondence and

(Continued)

in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions. *See Allen v. McClain EZ Pack of Alabama, Inc.* 665 F.2d at 697; *Johnson v. TMI Mgmt. Sys., Inc.,* 2012 WL 4435304, *5; *Oden*, 2013 WL 4046456, * 8." <u>Cormier v. ACAC Inc.</u>, 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013). <u>See also</u> <u>Whitney Bank v. Davis–Jeffries–Hunold, Inc.</u>, 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition).

## A.     <u>Reasonable Rate</u>

As the party requesting fees, DSIC bears the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. <u>Barnes</u>, 168 F.3d at 427 (citing <u>Norman</u>, 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." <u>Norman</u>, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. <u>Barnes</u>, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is

---

pleadings regarding all parties in lawsuit,"… "analysis of scheduling order/docket.."…. "save supplemental report regarding settlement to S drive," "Operation of Spreadsheet ...", etc….. The non-recoverability for clerical tasks may also be applicable to those entries labeled "Assistance with...." ….

filed[]'"").  Additionally, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates.  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  Moreover, this Court's prior awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees. Langford v. Hale Cty. Ala. Comm'n, 2016 WL 4976859, *3 (S.D. Ala. Sept. 16, 2016).

DSIC seeks to recover the following rates**: $240/hour** for Partner Geller (with 23 years of experience), **$250/hour** for Managing Partner Etcheverry (with 28 years of experience) and **$225/hour** for Associate Albert (with 14 years of experience); and **$250/hour** for Senior Shareholder Green (with 39 years of experience).  The relevant market rate is Mobile, Alabama.

In the relevant market, the undersigned found $250/hour to be a reasonable hourly rate for senior level attorneys/partners with 19 years and with 28 years of experience.  See, e.g., Higdon v. Critter Control of the Gulf Coast, LLC, 2013 WL 673462, *5 (S.D. Ala. Feb. 25, 2013) (awarding $250/hour to counsel who had been practicing since 1989); Goldsby v. Renosol Seating, LLC, 2013 WL 6535253, *9 (S.D. Ala. Dec. 13, 2013) (finding $250-$300/hour reasonable "for more experienced and qualified attorneys[]"); Decorative Components Incorporated, Inc. v. ICON Computing Solutions, Inc., 2012 WL 5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (recognizing that $250-$350/hour was reasonable for "top Mobile lawyers in complex cases" and $250/hour "for an attorney with 15 years of experience as a law firm partner[]").  Upon consideration, the Court finds that the following requested rates are reasonable for senior level attorneys/partners: **$240/hour** for Geller (with 23 years of experience), **$250/hour** for Etcheverry (with 28 years of experience), and **$250/hour** for Green (with 39 years of experience).

Concerning associates, this Court has awarded up to $225/hour for associates with 10 years (or more) of experience.  <u>See</u>, <u>e.g.</u>, <u>Wells Fargo Bank, N.A. v. Friday Const. Co., Inc.</u>, 2012 WL 5381558, *5 (S.D. Ala. Oct. 31, 2012) (awarding $225/hour to an attorney with 10 years of experience); <u>Wells Fargo Bank, N.A. v. Williamson</u>, 2011 WL 382799, *4 (S.D. Ala. Jan. 3, 2011) (same).  <u>See also</u> <u>Mitchell Co., Inc. v. Campus</u>, 2009 WL. 2567889, *1 and *17–18 (S.D. Ala. Aug. 18, 2009) (awarding $225/hour for an attorney with 12 years of experience). Upon consideration, the Court finds that the requested rate of **$225/hour** is reasonable for an associate with 14 years of experience such as Albert.

**B.**   <u>**Reasonable Hours**</u>

Geller's firm seeks **115.20 hours** and Green's firm seeks **18.10 hours**.  (Doc. 42-7 at 2 (Aff. Geller); Doc. 47-2 at 33(Aff. Green)).

In determining whether the number of hours expended are reasonable, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary." <u>Norman</u>, 836 F.2d at 1301.  When awarding a fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  <u>Barnes</u>, 168 F.3d at 428.  The Court will not permit a party to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." <u>Norman</u>, 836 F.2d at 1301 (emphasis omitted).

While there is no *per se* rule of proportionality, <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 573-574 (1986), the Supreme Court has made clear that such could still be considered a factor in determining the reasonableness of a fee request.  "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded .... It is, however, only one of

many factors that a court should consider in calculating an award of attorney's fees." Id. at 573 See also Wolff, 2012 WL 5303665, *4-5.  Moreover, when a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).  See also e.g., Padurjan, 441 Fed. Appx. at 687 (district court did not err when it reduced the hours 50% across the board); Garrett, 956 F.Supp.2d at 1343-1344 (10% across the board cut for excessive fees); SE Property Holdings, LLC v. Green, 2013 WL 790902, *6 (S.D. Ala. Mar. 1, 2013) (15% across the board reduction for clerical tasks performed by attorneys or paralegals, excessive billing for intra-office conferences among timekeepers, premature preparation of litigation documents never filed, and billings for monthly status reports); Barnes, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary[]"); Whitney Bank v. Davis-Jeffries-Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (50% across the board cut); Alorica, 2012 WL 5452196, *7 (50% across the board cut); Western Sur. Co. v. Bradford Elec. Co., Inc., 483 F.Supp.2d 1114, 1121 (N.D. Ala. 2007) (hours spent on clerical work is not recoverable and time billed must not be excessive, redundant or otherwise unnecessary and allowing for reductions in time for various activities, including reductions of 1/3 of the time billed); United States v. Adkinson, 256 F.Supp.2d 1297, 1316 (S.D. Fla. 2003) (reducing hours by 20% due to their excessive nature).

Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. Hensley, 461 U.S. at 433-434. See also e.g., Norman, 836 F.2d at 1299, 1303 ("[t]he court…is itself an expert on the question and may consider its own knowledge and experience

concerning reasonableness and proper fees and may form an independent judgment[]") (citations omitted); Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) (25% across the board reduction). And as noted *supra*, "regardless of who performs them[,]" clerical or secretarial tasks (i.e., administrative) are not recoverable.

The Court finds that the hours billed appear reasonable.

## C.   The Lodestar

"For decades the law in this circuit has been that '[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'"  Norman, 836 F.2d at 1303.  Accordingly, "where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the [appellate] court may make the award on its own experience." Id.  The lodestar figure established may be adjusted by consideration of various factors including the following:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala. 1988).  After consideration of the foregoing factors, the Court finds no need to adjust the lodestar.

## D.   Conclusion

As such, the Court finds the following in attorneys' fees to be reasonable: 1) for the Etcheverry firm**, $26,632;** and 2) for the Wright Green law firm, **$4,345.24.**

VI.     **Costs**

Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."  Additionally, the indemnity agreement (contract) provides for DSIC's recovery of costs.  The Etcheverry law firm requests **$842.50** in costs ($400 filing fee for the Complaint and $442.50 for process service fees). (Doc. 47-2 at 2, 9, 16 (Aff. Geller)).  Green seeks **$20.24** in costs for copies.  (Doc. 47-2 at 33, 38, 41 (Aff. Green)).  Upon consideration, the Court finds that the costs requested by DSIC are reasonable and recoverable.

VII.    **Conclusion**

Accordingly, it is **ORDERED** that DSIC's motion for summary judgment (Doc. 47) is **DENIED in part** and **GRANTED in part** as follows: 1) the motion as to DSIC's claims for breach of statutory indemnity against the Principal RMC (Count II) (Ala. Code § 8-3-5), common law indemnification against the Principal RMC (Count III) and unjust enrichment against the Indemnitors (Count IV), is **DENIED** as those claims are **MOOT; and** 2) the motion as to DSIC's breach of (indemnity) contract claim (Count I) against the Indemnitors is **GRANTED** and DSIC is entitled to indemnity in its favor and against Indemnitors (jointly and severally).  It is further **ORDERED** that DSIC's Objection is **MOOT in part** and **DENIED in part.**

The Court **ORDERS** that DSIC is entitled to recover $26,632 in attorneys' fees and $842.50 in costs to counsel for the Etcheverry law firm and $4,345.24 in attorneys' fees and $20.24 in costs to James P. Green for the Wright Green law firm.

A final judgment shall issue with Court's Order resolving the amount of damages.

**DONE** and **ORDERED** this the **5th** day of **October 2018.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**